# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION
## (CIVIL)

**YUEHAU OU,**
      **Plaintiff,**

  **vs.**                                 **CASE NO.: 0:20cv61631**

**ALEKSEY MELNIKOV, Individually**
**SERGIO LOPEZ, Individually**
**RICHARD TRUNTZ, Individually**
**LUIS ORTIZ, Individually**
**JOSUE VASQUEZ, Individually**
**JOSH BRASSO, Individually**
**TOMAS SANCHEZ, Individually and as the Chief of**
**The Hollywood Police Department,**
**CITY OF HOLLYWOOD, a municipality,**
**duly formed and organized in the State of Florida, as**
**the self-insured entity for the Hollywood Police Department**
**JESSALYNN RUBIO, Individually**
**ALEXIS BURY (fka ALEXIS KEMP), Individually**
**MICHAEL SATZ, Individually and as the State Attorney**
**For the 17th Judicial Circuit in and for Broward County,**
**Florida.**
        **Defendants.**

## COMPLAINT

---

COMES NOW, Plaintiff, YUEHAU OU (hereinafter "OU") and sues

**ALEKSEY MELNIKOV ("MELNIKOV"), SERGIO LOPEZ ("LOPEZ"),**

**RICHARD TRUNTZ ("TRUNTZ"), LUIS ORTIZ ("ORTIZ"), JOSUE**

**VASQUEZ ("VAZQUEZ"), JOSH BRASSO ("BRASSO"), TOMAS**

**SANCHEZ ("SANCHEZ"), individually and in his official capacity as the**

**Chief of the Hollywood Police Department, (All Defendant's aforementioned considered as the "HOLLYWOOD DEFENDANTS"), THE CITY OF HOLLYWOOD, ("HOLLYWOOD"), a Municipality, duly formed and organized in the State of Florida, as a self-insurer of the actions committed by the Hollywood Defendants, JESSALYNN RUBIO ("RUBIO"), ALEXIS BURY (fka ALEXIS KEMP) ("KEMP"), and MICHAEL SATZ, ("SATZ") as the duly elected State Attorney for the 17th Judicial Circuit in and for Broward County, Florida,** for false imprisonment and false arrest, violation of Plaintiffs Civil Rights under 42 USC 1983, fourth amendment search and seizure violations, false arrest, malicious prosecution, intentional infliction of emotional distress, fourteenth amendment due process violations, and defamation of character through slanderous and libelous statements, and as proofs therefore would state:

## <u>JURISDICTION AND VENUE</u>

1.      This case a case in controversy where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs;

2.      It is a matter in controversy between a subject of a foreign state who is lawfully admitted for permanent residence in the United States and citizens of the state of Florida who are domiciled in the state of Florida.

3.   This action arises under the United States Constitution and the Civil Rights Act of 1871 [42 U.S.C. § 1983].  This court has jurisdiction under and by virtue of 28

U.S.C. §§ 1331, 1343 and 1367.

4.      Venue is proper pursuant in the Southern District of Florida pursuant to 28

U.S.C. § 1391 (b) in that the Southern District of Florida is the judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred.

## **PARTIES**

5.      Plaintiff OU is an adult and a resident of Florida.

6.      Defendant MELNIKOV is an adult and a current resident of Florida.

7.      Defendant LOPEZ is an adult and a resident of Florida.

8.      Defendant TRUNTZ is an adult and a resident of Florida.

9.      Defendant ORTIZ is an adult and a resident of Florida.

10.      Defendant VASQUEZ is an adult and a resident of Florida.

11.      Defendant BRASSO is an adult and a resident of Florida.

12.      Defendant SANCHEZ is an adult and a resident of Florida.

13.      Defendant CITY OF HOLLYWOOD is a Municipality, duly formed and

organized in the State of Florida.

14.      Defendant RUBIO is an adult and a resident of Florida.

15.      Defendant BURY fka KEMP is an adult and a resident of Florida.

16.      Defendant SATZ is an adult and a resident of Florida.

17.      At all times material to the claims herein MELNIKOV (ID #3245) was

employed as a sworn Florida state law enforcement officer employed as a police officer

by HPD.

18.      At all times material to the claims herein LOPEZ (ID #2649) was

employed as a sworn Florida state law enforcement officer employed as a police officer by HPD.

19.    At all times material to the claims herein TRUNTZ (ID # 1827) was employed as a sworn Florida state law enforcement officer employed as a Sergeant and VIN shift Unit Supervisor by HPD.

20.    At all times material to the claims herein ORTIZ (ID # 2100) was employed as a sworn Florida state law enforcement officer employed as a  Lieutenant and a VIN Unit Supervisor by HPD.

21.    At all times material to the claims herein VASQUEZ (ID #3449) was employed as a sworn Florida state law enforcement officer employed as a Detective assigned to the Vice Intelligence Narcotics (VIN) Unit by HPD.

22.    At all times material to the claims herein BRASSO (ID #3015) was employed as a sworn Florida state law enforcement officer employed as a Detective assigned to the Vice Intelligence Narcotics (VIN) Unit by HPD.

23.    At all times relevant hereto, TOMAS SANCHEZ was the Chief of Police in the City of Hollywood.

24.    At all times relevant hereto, SANCHEZ was the final policymaking authority in matters of law enforcement for the Hollywood Police Department ("HPD") in Hollywood, Florida.  He was responsible for, among other things, hiring, training, and supervising HPD Officer and Agents, and for establishing, enforcing, and, if necessary, revising the policies, procedures, and customs and practices of HPD.

25.    At all times relevant hereto, the CITY OF HOLLYWOOD was a municipality formed and organized in 1925, and governed by the City Commission, led by

the Mayor, JOSH LEVY, other commissioners, and the Assistant City Manager, MEL

STANDLEY, whose title also includes Director of Public Safety.  The CITY OF

HOLLYWOOD is a self-insured entity, and is the ultimate overseer of the

HOLLYWOOD POLICE DEPARTMENT and responsible for the receipt, approval and

endorsement of the City of Hollywood's Annual Reports.  The CITY OF HOLLYWOOD

is also the self-insurer for the actions of the HOLLYWOOD POLICE DEPARTMENT

and the payment of any insurance claims filed against them.

26.     At all times material to the claims herein JESSALYN RUBIO (FBN

#117926) was a Florida licensed attorney, admitted to the Florida Bar on September 22,

2015, and was practicing law under the guidance and direction of MICHAEL SATZ and

employed by the Office of the State Attorney (SAO) as an Assistant State Attorney for

the 17th Judicial Circuit in and for Broward County assigned to the filing division of the

SAO to file sworn charges against members of the public for criminal violations of state

statute.

27.     Upon information and belief, at all times material to the claims herein

ALEXIS MELISHA BURY (fka KEMP)  (FBN#115138) was a licensed attorney,

admitted to the Florida Bar on March 25, 2015, and was practicing law under the

guidance and direction of MICHAEL SATZ and employed by the Office of the State

Attorney (SAO) as an Assistant State Attorney for the 17th Judicial Circuit in and for

Broward County assigned to the prosecution division of the SAO to prosecute charges

against members of the public for criminal violations of the law.

28.     At all times relevant hereto, MICHAEL SATZ was the State Attorney,

duly elected in his capacity to hire, train and supervise any and all assistant state attorneys

and attorney interns hired and delegated by his office to prosecute charges against

members of the public for criminal violations of Florida State statute.

**BACKGROUND FACTS**

29.    YUEHAU OU is a Chinese national, is domiciled in the State of Florida

and who is permanently and legally a resident of the United States, who was previously

licensed in China as a physician, performing CT scans, MIR, Ultrasound and X-Rays in a

hospital for twenty-four (24) years.

30.    Until March 6, 2018, Mrs. OU was married to Chinese national LU WEI,

a federal officer assigned to customs administration in China for more than thirty years.

31.    The OU's have one daughter together who is thirty-one (31) years old.

32.    In 2008, when the OU's daughter was nineteen (19) years old, she decided

to move to the United State to attend college in Minnesota.  Mrs. OU arrived a few short

years later in 2011 to the United States after obtaining a Visa.  Because there was no

ability for Mrs. OU to practice medicine in the U.S. due to rules against international

reciprocity, she studied for and received a massage license in California (which is still

valid today).

33.    After one (1) year, Mrs. OU moved from California to Florida, where she

again studied and received her massage license in Florida. Mrs. OU has been working as

a massage therapist, at massage therapy businesses which she has operated for the last

eight (8) years, first in Hollywood, FL and then in Boca Raton, FL.

34.    While Mrs. OU was legitimately working at a state registered massage

therapy business "JADE SPA" located at 1637 South 21st Avenue, Hollywood, FL, the

Vice Intelligence Narcotic Unit (VIN) of the Hollywood Police Department (HPD),

conducted two (2) sting operations at her location on August 10, 2016 and again on June 19, 2017.  Both times, the officers and detectives arrested YUEHAU OU on false accusations for allegedly offering herself for prostitution.

35.    Upon careful investigation by private investigations firm, Saffron Investigations, and the undersigned counsel, Nicole Sauvola-LaMay, Esquire, have uncovered discrepancies in the facts alleged by the Officers against Mrs. OU, including but not limited to, a fraudulent misrepresentation by officers that they possessed recordings of Mrs. OU offering money for sex acts, contradictions and false statements made by Police Officers and Detectives in their sworn testimony and sworn statements and procedure violations pertaining to Mrs. OUs arrests.

## CASE FACTS OVERVIEW

36.    On August 10, 2016, Mrs. OU was arrested by police Officers MELNIKOV and LOPEZ.  Whereby MELNIKOV and LOPEZ alleged that Mrs. OU had committed the act of solicitation or offer of prostitution by offering MELNIKOV a "hand job" for $40 during an undercover investigation at her massage therapy business "JADE SPA." (The HPD Probable Cause Affidavit, Report, Supplemental Report and photograph of the Audio Recording received from HPD is attached hereto as "Exhibits 1-4").

37.    After the arrest by the Officers on August 10, 2016, Mrs. OU was booked into the Broward County Jail.  (See Booking Report of Mrs. OU as "Exhibit 5").

38.    After her arrest, Mrs. OU retained the services of Michael Dutko, Esquire in Ft. Lauderdale, FL to defend her in the criminal case.

39.     Additionally, after her arrest, Mrs. OU retained the services of Saffron Investigations, to investigate what she believed to be the wrongful actions of the Hollywood Police Department.

40.     On the same day as the arrest, August 10, 2016, the Assistant State Attorney RUBIO, filed a charging document alleging "In the Name and By the Authority of the State of Florida:  Michael J. Satz, State Attorney of the Seventeenth Judicial Circuit of Florida, as Prosecuting Attorney for the State of Florida in the County of Broward, by and through his undersigned Assistant State Attorney, charges that YUEHUA OU on the 10th day of August, A.D. 2016, in the County and State aforesaid, did then and there unlawfully offer to commit, commit or engage in prostitution, lewdness or assignation, to wit:  "hand job" sex act for money, contrary to F.S. 796.07(2)(e).  (See Charging Document as Exhibit "6")

41.     RUBIO failed to review the evidence.  She failed to review the evidence alleged by MELNIKOV and LOPEZ, in submitting their filing package for review, namely the recording in which MELNIKOV and LOPEZ allege that OU offered MELNIKOV a "hand job" for $40, as stated in this Probable Cause Affidavit and supplemental report.  (See Exhibits 1-2).

42.     RUBIO furthers the prosecution of the case against OU, by forwarding the case on to the prosecution division as assigned to ALEXIS KEMP.  KEMP also furthers the prosecution of the case and fails to properly review the evidence against OU, pressing the case forward through the court, submitting discovery and setting hearings and requiring OUs presence throughout the proceedings.

43.     On or about September 16, 2016, YUEHAU OU learned of the Probable

Cause Affidavit, Report, and Supplemental Report, including the existence of an audio

tape, which formed the basis for her unlawful arrest.

44.     Until September 16, 2016, when the discovery was provided to her by the

ASA, Mrs. OU, did not realize that the actions of the Police on that day were unlawful.

45.     Despite the contractions in the depositions taken of the Officers in this

case, KEMP does not dismiss the case, and instead presses forward in prosecution,

requiring OU to spend additional monies on private investigators and attorney's fees,

depositions of officers, detectives, and supervisors of HPD Detectives, including the

Chief of Police.

46.     The actions of KEMP are complicit with RUBIO in prosecuting the case

and continuing the prosecution against OU without the benefit of Probable Cause

supporting even the arrest.

47.     Approximately 5 months after the arrest of Mrs. OU, HPD published their

2016 Agency's Annual Report, largely relayed by the local and national press describing

the actions of the HPD in Mrs. OU's case as  *"sophisticated undercover operations to*

*rein in organized vice crimes"* called "Red Light District" featuring Mrs. Ou's

photograph, full identity

and date of birth, without any disclosure that Mrs. OU had not been convicted of the

crime. (See HPD 2016 Annual Report as Exhibit "7").

48.     On Monday, June 19, 2017, HPD Officers arrested Mrs. OU again, at the

same massage therapy business, "JADE SPA" located at 1637 Southwest 21st Street,

Hollywood, Florida.

49.    This arrest was conducted by Detective VASQUEZ, assigned to the same VIN unit of the HPD as the Detectives who arrested her on August 10, 2016, for the same alleged violation:  "Prostitution-or Assignation Offer Commit Engage 1st Offense".

50.    On this date officers VASQUEZ and BRASSO stormed into JADE SPA without warning and Mrs. OU was immediately handcuffed, verbally assaulted, intimidated by the arresting officer and held against her will (false imprisonment).

51.    Mrs. OU was in the custody of the Detectives for more than thirty minutes while protesting and requesting to speak with her attorney.

52.    The Supervisor in charge Sgt FERRIANI eventually arrived and advised that NO PROBABLE CAUSE existed to arrest Mrs. OU and advised that Mrs. OU Should be released.

53.    Detective BRASSO, who authored the probable cause affidavit in support of the arrest of Mrs. OU later admitted that he deleted the Probable Cause Affidavit he prepared  after Mrs. OU was released and no report of the incident whatsoever was kept on file with the HPD explaining what had occurred that day.

54.    Additionally, according to BRASSO the actions which occurred at JADE SPA on June 9, 2017, with Mrs. OU were also audio recorded, however, BRASSO also deleted the recording after Mrs. OU was released. in this case as evidence against Mrs. OU for the 2nd arrest but he also deleted it.

55.    On or about July 13, 2018, the Honorable Judge CARPETER-TOYE of the Broward County Court, announced on behalf of the new prosecutors assigned to the case, LANDON RAY and GINA MESSING, that the case would be resolved with a "Nolle Prosequi" disposition.  (See  Nolle Pros Memo as Exhibit 8 attached hereto).

56.    In the Prosecutors Memorandum, RAY wrote:

- "The audio recording from the incident does not have the defendant offering a "hand job" for $40, which was stated in the Probable Cause Affidavit"

- "Additionally, the officer nor other law enforcement members who took part in this sting operation, do not remember exactly how the offer was relayed."

- "During a previous (sic) operation, the Hollywood VICE Unit arrested the same defendant.  However, after discussing the incident with each other, the VICE Unit "unarrested" the defendant because they said she never agreed to the "hand job".

- "Then the VICE Unit deleted the recording" (See Prosecutor's Memorandum as Exhibit 9)

57.    Mrs. OU battled with the Broward SAO for almost two years after her initial arrest on August 10, 2016, to get the charges against her dismissed.  Her battle in court, time from her family and job, the enormous cost to her in attorney's fees and investigative fees had caused her to bankrupt and close her business and the stress on her family cost her, her marriage and the relationship she had with her only daughter.

58.  "Standard Operating Procedures" for the HPD require:

    a.  In order to protect the freedom, Constitutional rights and interests of the public and the Department, the following procedures will be followed:

        1.  Probable cause to arrest must exist before a subject can be taken into custody.

    b.  Release of Person Arrested:

        1.   In any case where a subject is arrested, and newly acquired

evidence reveals that there is no longer probable cause to arrest or detain the subject, the following procedures will be followed:

a.   The person will be released immediately.  Any further holding and detaining of the person may constitute false imprisonment (civil and criminal).

b.   The concerned officer will notify his immediate Supervisor of the circumstances regarding the arrest.

c.   The Supervisor will advise the on-duty shift Lieutenant of the circumstances.

d.   The released person should be given an explanation and apology if appropriate and returned to the location where he/she was originally arrested.  This includes arranging to retrieve any vehicle or property that had been impounded and/or towed.

e.   A detailed Mobile Field Report documenting the incident will be prepared on a priority basis.

f.   The subject will be asked to sign the Hollywood Police Department Release Waiver Form indemnifying the Hollywood Police Department, however, if the subject refuses, he/she cannot be forced to sign the form and the refusal to sign the form will not delay the subject's release.

59.   The SOP for the HPD on Warrantless Arrest requires:

A.  Establishing Probable Cause:  Probable cause for arrest has been

defined to be "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused man to be guilty."

B. Any arrest must be based on Probable Cause that the crime occurred and that the Defendant was the perpetrator of the named crime(s). The source of the probable cause that the crime occurred and that the defendant was the perpetrator of the named crime(s). The source of the probable cause may be evidence gathered from the defendant, the scene of the arrest, informants, or other sources.

C. The experience and training of the arresting officer and his expert analysis of the situation is also material to the totality of circumstances establishing probable cause.

D. The decision to make a warrantless arrest will be guided by the factual situation involved, the Officer's probable cause, and any circumstances which may exist that would preclude expanding additional time to obtain an arrest warrant for the violator.

E. A finding by the Judge that there was a lack of probable cause for an arrest may result in any of the following:

1. Dismissal of the Charge;

2. Suppression of any evidence found incident to the arrest;

3. Civil sanctions for damages against the Officer and Department Municipality;

4. Criminal charges filed against the Officer

13

60.     The officers and detectives of the HPD VIN Unit targeted Mrs. OU

without caution and attempted to arrest her without out probable cause twice in a ten (10)

Month period from August 2016 to June 2017.

61.     Mrs. OU had never committed any crimes or been involved with the

police in any way in her life up to her involvement with the HPD in August 2016.

62.     As a result of the actions by the named HPD VIN unit Detectives,

MELNIKOV, LOPEZ, VASQUEZ, BRASSO, and their Supervisors TRUNTZ AND

ORTIZ,  violating her civil rights, by falsely imprisoning her, falsely arresting her, falsely

prosecuting her and falsely reporting crimes against her in the media and in reports, her

life has been ruined.

63.     As a result of the information provided by the named HPD officers,

Detectives and supervisors to the Public Information Officer, MIRANDA GROSSMAN,

numerous news reports both local, state-wide and national reports, video reports (online),

and television reports which included Mrs. OUs name and booking photo have reported

false crimes against her which have ruined her life.  The information re: Mrs. OU was

false and the dissemination of the information is defamatory, slanderous and libel.  The

information put out to the public has never been retracted from the public records and its

dissemination has ruined the Plaintiff's life and reputation in the community.

64.     The Hollywood Chief of Police and The City of Hollywood

(Commissioners, City Attorney and Assistant City Manager), are liable for publishing the

2016 Agency's Annual Report, largely relayed by the local and national press describing

the actions of the HPD in Mrs. OU's case as  *"sophisticated undercover operations to*

*rein in organized vice crimes"* called "Red Light District" featuring Mrs. Ou's

14

photograph, full identity and date of birth, without any disclosure that Mrs. OU had not been convicted of the crime. This publication is a permanent record in the City of Hollywood and has never been modified or changed to reflect the truth. This false information and the dissemination of the information is defamatory and libelous. The existence of this information has ruined the Plaintiffs life and reputation in the community.

65.     The results of the actions of RUBIO and KEMP, as Assistant State Attorneys and the lack of Supervision by Michael Satz as the State Attorney for the 17th Judicial Circuit in and for Broward County Florida, caused Mrs. OU to fight for her freedom and reputation in the community against crimes she did not commit. The fact that the case lacked the evidence it purported from the date of filing, is proof that the reckless indifference shown by the filing attorney, the prosecutor and their boss is tantamount to Malicious prosecution. The fact that it took Mrs. OU two (2) years to get the prosecutors to simply look at the evidence presented by HPD in charging her is shocking.

66.     The Plaintiff had retained the services of defense attorney Michael Dutko to represent her in the defense of the criminal action filed against her in Broward County which was ultimately nolle prossed by the prosecutor in 2018. The Plaintiff incurred attorneys fees, investigative fees and other costs associated with that defense and seeks reimbursement for those fees as damages in this case.

67.     The Plaintiff has retained the services of the undersigned counsel to represent her in the prosecution of this case, and has agreed to pay reasonable attorney's fees. The Plaintiff is seeking reimbursement from the Defendants for all of her attorney's

fees and costs in the prosecution of this case.

## COUNT I
### 42 U.S.C§ 1983 VIOLATION OF PLAINTIFF'S CIVIL RIGHTS
### (MELNIKOV AND LOPEZ – 4th AMEND)

68.     Plaintiff realleges paragraphs 1 through 67 above and incorporates them by this reference as applicable as if recited in full.

69.     On August 10, 2016, Plaintiff had a right under the U.S. Constitution to be free from illegal search and seizure of her person and her property.

70.     On August 10, 2016, MELNIKOV and LOPEZ were both sworn police officers acting under the color of state law in their dealings with Mrs. OU.

71.     MELNIKOV and LOPEZ actions on August 10, 2016, occurred within the scope of their employment with the HPD and under color of state law.

72.     MELNIKOV and LOPEZ knew or should have known, and every reasonable police officer in their position would have concluded, that there was no probable cause to arrest  OU, and there was no probable cause or reasonable suspicion to believe OU was committing a crime at any time while she was being observed by MELNIKOV or surveilled by LOPEZ.

73.     MELNIKOV and LOPEZ  had a legal duty only to search or seize Mrs. OU or her property in the event they had probable cause to do so and to use only that amount or degree of force against OU as was reasonable and necessary under the circumstances.

74.     On August 10, 2016 MELNIKOV and LOPEZ used excessive and unnecessary amount of force against OU in seizing her person and holding her under arrest,

which was objectively unreasonable in light of the fact and circumstances confronting MELNIKOV and LOPEZ did not involve a rapidly evolving situation other than that created by MELNIKOV, particularly considering that (a) he lacked reasonable suspicion or probable cause, (b) there was no law violation in OU collecting money from MELNIKOV for his receipt of a massage from OU, (c) there was no verbal communication by OU which supported MELNIKOV and LOPEZ's version of events that OU offered MELNIKOV a "blow job" for $40.00; (d) OU posted no immediate threat to the safety of MELNIKOV or LOPEZ or any other person; and (e) OU was not actively resisting arrest or attempting to evade arrest by flight.

75.     MELNIKOV and LOPEZ knew or should have known, and every reasonable officer in that position would have concluded, that the force they used against OU was unlawful, given the search and seizure of her person, her business and her property was unlawful.

76.     MELNIKOV and LOPEZ violated OUs' constitutional rights to be secure in her person, free from unreasonable seizure and from the use of excessive force.

77.     MELNIKOV and LOPEZ acted knowingly, intentionally, and maliciously, and/or with a reckless or callous indifference to the federally protected rights of OU.

78.     MELNIKOV and LOPEZ's unlawful restraint of Plaintiff's liberty was also accomplished by MELNIKOV confining Plaintiff to an area in which the Plaintiff did not wish to be confined.

79.     Plaintiff OU was further restrained by MELNIKOV and LOPEZ's use of coercive words and threats of force as well as actual force and immediate means of coercion against Plaintiff, so that Plaintiff was restrained and deprived of her liberty.

MELNIKOV restrained Plaintiff without any justification and in the absence of probable cause.

80.    MELNIKOV and LOPEZ searched Mrs. OUs business and seized money belonging to OU in the legitimate operation of her business.

81.    At all times material to this action, and at all times during which Plaintiff was being unlawfully restrained, Plaintiff was restrained against her will, and without consent, so that Plaintiff was not free to leave her place of confinement.

82.    Upon information and belief, MELNIKOV and LOPEZ engaged in the creation of false evidence in order to enter into the business operations of the Plaintiff and to further threaten, harass, and attempt to force her to admit that she was conducting illegal activities even though she was only conducting legal business as a licensed massage therapist.

83.    Upon information and belief, MELNIKOV and LOPEZ engaged in a pattern of entrapment and conspiring to present false evidence against Plaintiff and others in their targeted investigation "Red Light District" in order to gain favor in the position as members of the VIN unit at HPD.

84.    Aa direct and proximate result of MELNIKOV and LOPEZ's violation of OU's civil rights, OU has suffered damages, including mental anguish, pain and suffering, emotional distress, public humiliation and embarrassment, loss of her relationship with her husband and her daughter, loss of earnings, loss of her business, and a compromise of her immigration status. The losses are permanent and/or continuing and OU will continue to suffer losses in the future.

**WHEREFORE**, Plaintiff demands judgment against MELNIKOV and LOPEZ

for compensatory and punitive damages, cost, reasonable attorneys' fees pursuant to 42

U.S.C. § 1983, and such other and further relief as the Court deems appropriate.

<u>**COUNT II**</u>
<u>**42 U.S.C § 1983 DEPRIVATION OF PLANTIFF'S CIVIL RIGHTS**</u>
<u>**(TRUNTZ – 4th AMENDMENT)**</u>

85.     Plaintiff realleges paragraphs 1 through  67 above and incorporates them

by this reference as is relevant and as if recited in full.

86.     Plaintiff realleges paragraphs 68 through 84, related to MELNIKOV and

LOPEZ.

87.     At all material times hereto, including the date of OUs first arrest on

August 10, 2016, Sergeant TRUNTZ was responsible for VIN Unit agents and employees

at HPD as the VIN Shift Unit Sergeant.

88.     TRUNTZ was managing the operation on the date of OUs first arrest.

89.     TRUNTZ was in charge of his Units personnel and their annual

evaluations.

90.     During the reviewing process of the Probable Cause Affidavit, and the

preparation of narratives, his role was to find discrepancies between the reports and the

related audio recording, and to avoid the transmission of any case the SAO, for filing

based on an unlawful arrest.

91.     TRUNTZ failed to review the reports and failed to stop the unlawful

arrest.

92.     TRUNTZ allowed the case to be submitted to the SAO with affidavits

from his Detectives alleging that the audio revealed the facts listed in the Probable Cause

Affidavit, when in fact, no such facts supported, nor did the audio reveal that OU offered

a "blow job" for any amount of money.

93.     As the supervising authority over MELNIKOV and LOPEZ, TRUNTZ' knew that his subordinates were engaging in the acts described in Count I, and he knew or should have known that those actions would deprive Mrs. OU of her civil rights. And TRUNTZ failed in his actions and inactions to protect the rights of Mrs. OU.

94.     Under color of state law, and in violation of 42 U.S.C.§ 1983, OU was deprived of her constitutional rights to be secure in her person, free from unreasonable seizure and from the use of excessive force.

95.     As a direct and proximate result of TRUNTZ failure to supervise the members of his VIN unit, there was a violation of OU's' civil rights, OU has suffered damages, including mental anguish, pain and suffering, emotional distress, public humiliation and embarrassment, loss of her relationship with her husband and her daughter, loss of earnings, loss of her business, and a compromise of her immigration status. The losses are permanent and/or continuing and OU will continue to suffer losses in the future.

**WHEREFORE**, Plaintiff demands judgment against TRUNTZ for compensatory damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1983, and such other and further relief as the court deems appropriate.

### COUNT III
### 42 U.S.C § 1983 DEPRIVATION OF PLANTIFF'S CIVIL RIGHTS (ORTIZ)

96.     Plaintiff realleges paragraphs 1 through 67 in relevant form above and incorporates them by this reference as is recited in full.

97.     Plaintiff realleges paragraphs 68 through 95 from above and incorporates them by this reference with regard to the actions committed by MELNIKOV, LOPEZ and TRUNTZ.

98.     At all material times hereto, including the date of OUs first arrest on August 10, 2016, Lieutenant was responsible for VIN Unit agents and employees at HPD as the VIN Unit Supervisor.

99.     The duties of the VIN Unit Supervisor include directing and coordination of activities and responsibility for the supervision and training of unit personnel.

100.    In accordance with the SOPs for HPD, ORTIZ main responsibilities are:

    a.  The VIN Unit Lieutenant is primarily responsible for oversight of all undercover tactical operations involving the use of Hollywood Vice Intelligence and Narcotics Unit Members.

    b.  The Unit Lieutenant is additionally responsible for the overall management of the Unit and its Members both Sworn and Non-Sworn.

    c.  The VIN Unit Lieutenant will ensure all matters of importance relative to CID/VIN operations are communicated to the Major in a timely manner.

    d.  Specific responsibilities include:

        1.  Ensure investigative coordination of all VIN investigations to include any inter-agency investigations.  Responsibility for investigative oversight of all VIN investigations ensuring all available investigative resources and processes are utilized.

        2.  Ensures summary reports are available upon request for long term

continuing investigations.  Prepares investigative memorandum prior to beginning of any long-term investigation.  The Memorandum will provide an overview and include an objective and any anticipated resources needed to support the operation.

3.  Ensures all State Attorney case declines are reviewed and refiled when practical.

4.  Ensure all correspondence necessary for the efficient operations is completed in a timely manner.

5.  Ensure Detectives keep investigative notes and log their daily activity in issued Daily Journal.

101. During the Case reviewing process, as a Supervisor, ORTIZ should have seen discrepancies between police reports and the related audio recording in order to avoid malicious prosecution.  The lack of oversight and accountability facilitated unlawful arrests and other police misconduct instead of upholding police integrity to restore or enhance public confidence in policing.

102. Being responsible, as a Supervisor for the effective maintenance of ethical standards, Lieutenant ORTIZ also failed in his responsibility to uphold the "Human Rights Standards and Practice for the Police" dictated by the United Nations to all police officials:

a.  No one shall be subjected to arbitrary arrest or detention;

b.  No one shall be deprived of his or her liberty except on such grounds and in accordance with such procedures as are established by law.

c.  Review regularly, for a clear understanding, your powers of arrest and the

procedures to adopt upon and following arrest.

d. Participate in training to develop and maintain the necessary interpersonal skills, and especially skills of communication, to enable you to affect arrests expertly, discreetly and with due respect for human dignity.

e. Where resistance is not evident, attempt calm, polite, disarming language when effecting an arrest, resorting to strong authoritative tone only when necessary.

103. ORTIZ is obligated to enforce the following applicable "Standard Operating Procedures" for the HPD:

c. In order to protect the freedom, Constitutional rights and interests of the public and the Department, the following procedures will be followed:

2. Probable cause to arrest must exist before a subject can be taken into custody.

d. Release of Person Arrested:

2. In any case where a subject is arrested, and newly acquired evidence reveals that there is no longer probable cause to arrest or detain the subject, the following procedures will be followed:

g. The person will be released immediately. Any further holding and detaining of the person may constitute false imprisonment (civil and criminal).

h. The concerned officer will notify his immediate Supervisor of the circumstances regarding the arrest.

i.   The Supervisor will advise the on-duty shift Lieutenant of the circumstances.

j.   The released person should be given an explanation and apology if appropriate and returned to the location where he/she was originally arrested.  This includes arranging to retrieve any vehicle or property that had been impounded and/or towed.

k.   A detailed Mobile Field Report documenting the incident will be prepared on a priority basis.

**l.**   The subject will be asked to sign the Hollywood Police Department Release Waiver Form indemnifying the Hollywood Police Department, however, if the subject refuses, he/she cannot be forced to sign the form and the refusal to sign the form will not delay the subject's release.

104.   As a direct and proximate result of ORTIZ' actions and inactions, under color of state law, and in violation of 42 U.S.C.§ 1983, OU was deprived of her constitutional rights to be secure in her person, free from unreasonable seizure and from the use of excessive force.

105.   ORTIZ knew that as the supervising authority over MELNIKOV, LOPEZ, and TRUNTZ that his subordinates were engaging in the acts described in Count I, and he knew or should have known that those actions would deprive Mrs. OU of her civil rights. And ORTIZ failed in his actions and inactions to protect the rights of Mrs. OU.

106.     As a direct and proximate result of ORTIZ failure to supervise the members of his VIN unit, there was a violation of OU's' civil rights, OU has suffered damages, including mental anguish, pain and suffering, emotional distress, public humiliation and embarrassment, loss of her relationship with her husband and her daughter, loss of earnings, loss of her business, and a compromise of her immigration status. The losses are permanent and/or continuing and OU will continue to suffer losses in the future.

**WHEREFORE**, Plaintiff demands judgment against ORTIZ for compensatory damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1983, and such other and further relief as the court deems appropriate.

<u>**COUNT IV**</u>
<u>**FALSE ARREST BROUGHT UNDER 42 U.S.C. §1983**</u>
<u>**(MELINVOV, LOPEZ, TRUNTZ, ORTIZ)**</u>

107.     Paragraphs 1 through 67 are hereby re-alleged and incorporated by reference in this Count.

108.     This count sets forth a claim against MELNIKOV, LOPEZ TRUNTZ AND ORTIZ, who, individually and in tandem, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution to be free from false arrests. These violations were of the type and character as to which any reasonable law enforcement agency or officer would be aware.

109.     MELNIKOV, LOPEZ, TRUNTZ and ORTIZ misused their power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law. The violations of Plaintiff's rights, as described above, occurred under color of state law and are actionable under 42

U.S.C. §1983.  MELNIKOV, LOPEZ, TRUNTZ and ORTIZ are persons under the laws applicable to this Count.

110.    On August 10, 2016, Plaintiff had a right under the U.S. Constitution to be free from false arrest.

111.    On August 10, 2016, MELNIKOV, LOPEZ, TRUNTZ and ORTIZ were all sworn police officers acting under the color of state law in their dealings with Mrs. OU.

112.    MELNIKOV, LOPEZ, TRUNTZ and ORTIZ actions on August 10, 2016, occurred within the scope of their employment with the HPD and under color of state law.

113.    MELNIKOV, LOPEZ, TRUNTZ AND ORTIZ knew or should have known, and every reasonable police officer in their position would have concluded, that there was no probable cause to arrest  OU, and there was no probable cause or reasonable suspicion to believe OU was committing a crime at any time while she was being observed by MELNIKOV or surveilled by LOPEZ.

114.    MELNIKOV, LOPEZ, TRUNTZ and ORTIZ  had a legal duty only to arrest Mrs. OU in the event they had probable cause to believe a crime had been committed.

115.    On August 10, 2016 MELNIKOV, LOPEZ, TRUNTZ and ORTIZ caused the arrest of Mrs. OU without probable cause and charged her with the crime of prostitution.

116.    Approximately two (2) years after Mrs. OUs arrest, the prosecuting attorney dismissed the charges against her and included statements in the disposition memorandum, that no probable cause existed at the time of the arrest.

117.    MELNIKOV, LOPEZ, TRUNTZ and ORTIZ knew or should have known,

and every reasonable officer in that position would have concluded, that the arrest was unlawful.

118.    MELNIKOV,  LOPEZ, TRUNTZ and ORTIZ violated OUs' constitutional rights to be secure in her person, free from unlawful arrest.

119.    MELNIKOV, LOPEZ, TRUNTZ and ORTIZ acted knowingly, intentionally, and maliciously, and/or with a reckless or callous indifference to the federally protected rights of OU.

120.    MELNIKOV, LOPEZ, TRUNTZ, and ORTIZ unlawful arrest of Plaintiff was  accomplished by them despite Mrs. OUs objections and insistence that she was innocent.

121.    Upon information and belief, MELNIKOV and LOPEZ engaged in the creation of false evidence in order to enter into the business operations of the Plaintiff and to further threaten, harass, and attempt to force her to admit that she was conducting illegal activities even though she was only conducting legal business as a licensed massage therapist.  The actions by MELNIKOV and LOPEZ were known to and sanctioned by their supervisors TRUNTZ and ORTIZ.

122.    Upon information and belief, MELNIKOV and LOPEZ engaged in a pattern of entrapment and conspiring to present false evidence against Plaintiff and others in their targeted investigation "Red Light District" in order to gain favor in the position as members of the VIN unit at HPD.  The actions by MELNIKOV and LOPEZ were known to and sanctioned by their supervisors TRUNTZ and ORTIZ.

123.    Aa direct and proximate result of MELNIKOV, LOPEZ, TRUNTZ and ORTIZ violation of OU's civil rights, OU has suffered damages, including mental

anguish, pain and suffering, emotional distress, public humiliation and embarrassment, loss of her relationship with her husband and her daughter, loss of earnings, loss of her business, and a compromise of her immigration status. The losses are permanent and/or continuing and OU will continue to suffer losses in the future.

**WHEREFORE**, Plaintiff demands judgment against MELNIKOV, LOPEZ, TRUNTZ and ORTIZ for compensatory and punitive damages, cost, reasonable attorneys' fees pursuant to 42 U.S.C. § 1983, and such other and further relief as the Court deems appropriate.

## COUNT V
## COMMON LAW FALSE IMPRISONMENT/ARREST (VASQUEZ & BRASSO)

124.   Plaintiff realleges paragraphs 1 through 67 in relevant form above and incorporates them by this reference as is recited in full.

125.   This is an action against Defendant JOSUE VASQUEZ and JOSH BRASSO, in their official capacity for common law false imprisonment/arrest. This Count is pled in the alternative and for the purposes of this count, Defendant VASQUEZ and BRASSO were acting within the course and scope of their employment with SANCHEZ.

126.   Plaintiff is entitled to relief against VASQUEZ and BRASSO in that they, intentionally and unlawfully detained and restrained the Plaintiff, when Plaintiff was unlawfully seized and deprived of her liberty without any reasonable cause or color of authority and maintained such complete restraint and deprivation for a period of time.

127.   On Monday, June 19, 2017, HPD Officers arrested Mrs. OU again, at the same massage therapy business, "JADE SPA" located at 1637 Southwest 21st Street,

Hollywood, Florida.

128.    This arrest was conducted by Detective VASQUEZ, assigned to the same VIN unit of the HPD as the Detectives who arrested her on August 10, 2016, for the same alleged violation:  "Prostitution-or Assignation Offer Commit Engage 1st Offense".

129.    In this date officers VASQUEZ and BRASSO stormed into JADE SPA without warning and Mrs. OU was immediately handcuffed, verbally assaulted, intimidated by the arresting officer and held against her will (false imprisonment).

130.    Mrs. OU was in the custody of the Detectives for more than thirty minutes while protesting and requesting to speak with her attorney.

131.    Supervisor in charge Sgt FERRIANI eventually arrived and advised that NO PROBABLE CAUSE existed to arrest Mrs. OU and advised that Mrs. OU Should be released.

132.    Detective BRASSO, who authored the probable cause affidavit in support of the arrest of Mrs. OU later admitted that he deleted the Probable Cause Affidavit he prepared  after Mrs. OU was released and no report of the incident whatsoever was kept on file with the HPD explaining what had occurred that day.

133.    Additionally, according to BRASSO the actions which occurred at JADE SPA on June 9, 2017, with Mrs. OU were also audio recorded, however, BRASSO also deleted the recording after Mrs. OU was released. in this case as evidence against Mrs. OU for the 2nd arrest but he also deleted it.

134.    It is unlawful restraint of the Plaintiff's liberty was also accomplished by VASQUEZ and BRASSO' confining Plaintiff to an area in which the Plaintiff did not wish to be confined.

135.     Plaintiff was further restrained by VASQUEZ and BRASSO with the use of coercive words and threats of force as well as actual force and immediate means of coercion against Plaintiff, so that the Plaintiff was restrained and deprived of her liberty. VASQUEZ and BRASSO restrained Plaintiff without any justification and in the absence of probable cause. VASQUEZ and BRASSO, falsely arrest Plaintiff.

136.     At all times material to this action, and at all times during which Plaintiff was being unlawfully restrained, Plaintiff was restrained against her will, and without consent, so that Plaintiff was not free to leave her place of confinement.

137.     As a direct and proximate cause of Defendant VASQUEZ and BRASSO's actions, Plaintiff has been damaged, and damages, including mental anguish, pain and suffering,  emotional distress, public humiliation and embarrassment, loss of her relationship with her husband and her daughter, loss of earnings, loss of her business, and a compromise of her immigration status. The losses are permanent and/or continuing and OU will continue to suffer losses in the future.  VASQUEZ And BRASSO are jointly and severally liable to Plaintiff.

**WHEREFORE**,     Plaintiff     demands     judgment     against VASQUEZ and BRASSO for compensatory and punitive damages, cost, reasonable attorneys' fees for false arrest, and such other and further relief as the Court deems appropriate.

### COUNT VI
### FALSE ARREST BROUGHT UNDER 42 U.S.C. §1983
### (VASQUEZ and BRASSO)

138.     Paragraphs 1 through 67 are hereby re-alleged and incorporated by relevance and reference in this Count.

139.     This count sets forth a claim against VASQUEZ and BRASSO who,

individually and in tandem, violated Plaintiff's rights under the Fourth Amendment to the United States Constitution to be free from false arrests. These violations were of the type and character as to which any reasonable law enforcement agency or officer would be aware.

140.    VASQUEZ and BRASSO misused their power, possessed by virtue of state law and made possible only because they were clothed with the authority of state law. The violations of Plaintiff's rights, as described above, occurred under color of state law and are actionable under 42 U.S.C. §1983. VASQUEZ and BRASSO are persons under the laws applicable to this Count.

141.    On June 9, 2017, Plaintiff had a right under the U.S. Constitution to be free from false arrest.

142.    On June 9, 2017, VASQUEZ and BRASSO were all sworn police officers acting under the color of state law in their dealings with Mrs. OU.

143.    VASQUEZ and BRASSO actions on June 9, 2017, occurred within the scope of their employment with the HPD and under color of state law.

144.    VASQUEZ and BRASSO knew or should have known, and every reasonable police officer in their position would have concluded, that there was no probable cause to arrest OU, and there was no probable cause or reasonable suspicion to believe OU was committing a crime at any time while she was being observed or surveilled by VASQUEZ and BRASSO.

145.    VASQUEZ and BRASSO had a legal duty only to arrest Mrs. OU in the event they had probable cause to believe a crime had been committed.

146.    On June 9, 2017 VASQUEZ and BRASSO caused the arrest of Mrs. OU

without probable cause and advised her that she was being charged with the crime of prostitution.

147.     VASQUEZ and BRASSO knew or should have known, and every reasonable officer in that position would have concluded, that the arrest was unlawful.

148.     VASQUEZ and BRASSO violated OUs' constitutional rights to be secure in her person, free from unlawful arrest.

149.     VASQUEZ and BRASSO acted knowingly, intentionally, and maliciously, and/or with a reckless or callous indifference to the federally protected rights of OU.

150.     VASQUEZ and BRASSO unlawful arrest of Plaintiff was  accomplished by them despite Mrs. OUs objections and insistence that she was innocent.

151.     Upon information and belief, VASQUEZ and BRASSO engaged in the creation of false and fraudulent evidence in order to enter into the business operations of the Plaintiff and to further threaten, harass, and attempt to force her to admit that she was conducting illegal activities even though she was only conducting legal business as a licensed massage therapist.

152.     The fraudulent and fraudulent actions by VASQUEZ and BRASSO are further proved by the fact that they deleted the probable cause affidavit prepared for the benefit of Mrs. OUs arrest and the alleged recording which contained the alleged evidence against her.

153.     Further, VASQUEZ and BRASSO failed to prepare any reports, waivers or journal entries outlining the events which took place that day and their encounter with Mrs. OU at her business.

154.     Upon information and belief, VASQUEZ and BRASSO engaged in a

pattern of entrapment and conspiring to present false evidence against Plaintiff and others in their targeted investigation "Red Light District" in order to gain favor in the position as members of the VIN unit at HPD.

155.   Aa direct and proximate result of VASQUEZ and BRASSO's violation of OU's civil rights, OU has suffered damages, including mental anguish, pain and suffering, emotional distress, public humiliation and embarrassment, loss of her relationship with her husband and her daughter, loss of earnings, loss of her business, and a compromise of her immigration status. The losses are permanent and/or continuing and OU will continue to suffer losses in the future.

**WHEREFORE**,   Plaintiff   demands   judgment   against VASQUEZ and BRASSO for compensatory and punitive damages, cost, reasonable attorneys' fees pursuant to 42 U.S.C. § 1983, and such other and further relief as the Court deems appropriate.

## COUNT VII
## COMMON LAW MALICIOUS PROSECUTION (MELNIKOV, LOPEZ, TRUNTZ and ORTIZ)

156.   Paragraphs 1 through 67 are hereby re-alleged and incorporated by reference in this Count.

157.   This count sets forth claims against MELNIKOV, LOPEZ, TRUNTZ and ORTIZ for malicious prosecution.  For purposes of this count, MELNIKOV, LOPEZ, TRUNTZ, and ORTIZ were acting outside the course and scope of their employment with the HPD.

158.   MELNIKOV, LOPEZ, TRUNTZ and ORTIZ  caused  the commencement  and/or  continuation  of  criminal  proceedings  against  the  Plaintiff

subject to this Count. The subject proceedings had bona fide terminations in Plaintiff's favor in that the charges against Plaintiff were dropped or dismissed or otherwise resolved in Plaintiff's favor.

159.   There was no probable cause or reasonable basis in fact or in law for MELNIKOV, LOPEZ, TRUNTZ, or ORTIZ to cause the commencement of the criminal proceedings against Plaintiff.

160.   MELNIKOV, LOPEZ, TRUNTZ and ORTIZ acted intentionally and with malice in initiating the criminal proceedings against the Plaintiff subject to this Count, as well as in making the arrests of Plaintiff, and they all knew that their actions against Plaintiff were not supported by even arguable probable cause.

161.   As a direct and proximate cause of MELNIKOV, LOPEZ, TRUNTZ, and ORTIZ actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, emotional distress, public humiliation and embarrassment, loss of her relationship with her husband and her daughter, loss of earnings, loss of her business, and a compromise of her immigration status. The losses are permanent and/or continuing and OU will continue to suffer losses in the future. Plaintiff is entitled to punitive damages under this count, along with attorneys' fees and costs.

**WHEREFORE**,      Plaintiff demands judgment against MELNIKOV, LOPEZ, TRUNTZ and ORTIZ for compensatory and punitive damages, cost, reasonable attorneys' fees for malicious prosecution, and such other and further relief as the Court deems appropriate.

## COUNT VIII
## VIOLATION OF CIVIL RIGHTS 42 USC 1983
## CHIEF TOM SANCHEZ

162.    Paragraphs 1 through 67 are hereby re-alleged and incorporated by reference in this Count.

163.    Paragraphs 68 through 161 are hereby realleged and incorporated by reference in this Count.

164.  At all material times from prior to August 10, 2016 to present, SANCHEZ was responsible for HPD, its agents and employees, including  supervising, overseeing,  training  and  establishing policies, customs and procedures to conform their conduct to the United States Constitution and Florida common law.

165.   At all times material hereto, SANCHEZ was charged with the responsibility of  adopting  and  implementing rules, policies, practices, customs, and procedures for the proper and efficient maintenance, supervision, and control of HPD Police officers. These duties include, but are not limited to:

a.             To create, adopt, and implement rules, regulations, practices, and procedures, towards hiring, supervising, and retaining law enforcement officers who do not have a propensity towards the excessive use of force;

b.            To create, adopt and implement rules and regulations, practices and procedures, for proper and efficient training of law enforcement officers in a way and to an extent necessary to ensure the utilization of a force continuum, which prevents any propensity towards excessive force, and which ensures that the least amount of force would be utilized to maintain order and control;

c.            To create, adopt, and implement rules and regulations, practices and

procedures for proper policing, ensuring elimination of improper "stop and frisk" tactics without reasonable suspicion or probable cause;

d.     To create, adopt, and implement rules and regulations, practices, and procedures for the proper and efficient supervision, control, discipline, and assignment of law enforcement officer in a way and to an extent necessary to ensure that citizens will not be subjected to unnecessary force and unlawful search and seizures by the agents and employees of the HPD; and

e.     To implement rules, regulations, policies, practices, and procedures for the proper and efficient supervision, discipline, control, and investigation of law enforcement officers to reduce or eliminate instance of untruthfulness, including unlawful use of force and illegal searches and seizures and instances of corroboration or ratification of untruthful accounts of excessive force events committed by fellow law enforcement officers.

166.     SANCHEZ owed a legal duty to OU to exercise reasonable care in hiring, training, and retaining safe and competent employees.

167.     OU was in the zone of risk that was reasonably foreseeable to SANCHEZ.

168.     SANCHEZ breached that duty and the breach caused OU' damages.

169.     In addition, SANCHEZ with deliberate indifference to the possibility of OU' injuries, has encouraged the well-settled policy, practice, and custom of using "stop and frisk" tactics, absent any reasonable suspicion or probable cause to believe that these individuals have committed a criminal act, in the City of Hollywood, Florida.

170.     This invariably involves, in particular and in particular and in disproportionate number of arrests for which no probable cause existed in a VIN operation called "Red Light District", thereby resulting in Police officers, such as MELNIKOV, LOPEZ, VASQUEZ, and BRASSO engaging in the unwarranted use of "warrantless search and seizure" tactics and no probable cause illegal arrests.

171.     Despite knowing of the unconstitutional behavior and the need to take corrective action, SANCHEZ failed to do so.

172.     SANCHEZ has also, with deliberate indifference as to the possibility of OUs' injuries, failed to adequately train or otherwise supervise and direct HPD and its Police officers concerning the rights of the citizens they encounter in their duties, such that it is a well-settled policy, practice, and custom for Police officers, including MELNIKOV, LOPEZ, VASQUEZ, and BRASSO, and their Supervisors, to take extreme and reckless actions against the citizens of Hollywood, Florida they encounter, including OU, all in the name of law enforcement, resulting in Police officers violating the constitutional rights of innocent citizens.

173.     SANCHEZ was on notice, by this history of widespread abuse, of the need to correct the well-settled policy, practice, and custom of the police officers under his direction, including MELNIKOV, LOPEZ, VASQUEZ and BRASSO's extreme and reckless actions against the citizens of Hollywood, Florida.

174.     The need for more or different training had been so obvious and the inadequacy of same, combined with SANCHEZ' conscious choice not to act, and to instead release the Annual report described in this Complaint to the City of Hollywood without noting anywhere in the report that the arrests and the names included therein did

not result in convictions.  SANCHEZ actions has resulted in the violation of constitutional rights, including, but not limited to the deprivation of OU's civil rights.

175.     In further disregard of the citizens of Hollywood, Florida, SANCHEZ has, with deliberate indifference, either failed to direct, failed to otherwise fully require, or has sought to limit, HPD and others in the proper investigation of the extreme and wanton acts of

MELNIKOV, LOPEZ, VASQUEZ and BRASSO, as well as their Supervisors, such that it is the well-settled policy, practice, and customs of HPD to limit internal investigations, with few or no serious questions ever raised as to MELNIKOV, LOPEZ, VASQUEZ and BRASSO's decision to conduct illegal search and seizures. Despite knowing of this behavior and the need to take corrective action, SANCHEZ declined to do so.

176.     By limiting and/or failing to properly investigate, resulting in findings of no illegal searches and seizures and no illegal arrests are the justification MELNIKOV, LOPEZ, VASQUEZ, and BRASSO's extreme actions, by encouraging the well-settled policy, practice, and custom of using "wild west" tactics, absent any reasonable suspicion or probable cause to believe that these individuals have committed a criminal act, and through allowing the well-settled policy, practice, and custom of the Chief of Police's extreme and reckless actions against the citizens of Hollywood, Florida, SANCHEZ has ratified, condoned, consented to MELNIKOV, LOPEZ, VASQUEZ and BRASSO's unlawful conduct, specifically including the unlawful conduct of MELNIKOV, LOPEZ, VASQUEZ and BRASSO as to OU. The ratification, condoning of, and consenting to, prior unlawful conduct of MELNIKOV and LOPEZ served as an inducement to VASQUEZ and BRASSO to

violate OUs' civil rights a second time, and to ratify, condone and consent to the violation of OU's civil rights confirmed that MELNIKOV, LOPEZ, VASQUEZ, and BRASSO's conduct and that of their supervisors, TRUNTZ and ORTIZ conformed with SANCHEZ's policy, practice, and procedure.

177.   SANCHEZ was on notice of the history of failing to properly investigate (and thus address and correct) the extreme and wanton acts of MELNIKOV and LOPEZ and failed to do so, leading to OU's deprivation of civil rights on August 10, 2016 and then again on June 9, 2017. The deprivations of civil rights, of which the circumstances described herein were a material part together constituted a widespread pattern sufficient to notify SANCHEZ and were obvious, flagrant, rampant, and of continued duration rather than isolated occurrences.

178.   HPD has a history of reports of illegal search and seizures and violations of citizens' rights, of which SANCHEZ was aware. There is no evidence that MELNIKOV, LOPEZ, VASQUEZ, BRASSO, TRUNTZ or ORTIZ were counseled on correction of such excessive use of force, warrantless searches and seizures or unlawful arrests causing injuries by their supervisors, including SANCHEZ.

179.   SANCHEZ knew or should have known MELNIKOV, LOPEZ, VASQUEZ, BRASSO, TRUNTZ or ORTIZ had a propensity for misconduct, including excessive use of force, subjecting citizens to warrantless and illegal searches and seizures and subsequent illegal arrests against members of the public.

180.   The actions committed by MELNIKOV, LOPEZ, VASQUEZ, BRASSO, TRUNTZ or ORTIZ against OU were proximately caused by the well-settled policies, customs, practices, and procedures of SANCHEZ in failing to fulfill his duties as alleged

herein, which was also the moving force behind by MELNIKOV, LOPEZ, VASQUEZ, BRASSO, TRUNTZ or ORTIZ violating OU's civil rights.

181.  The actions to the well-settled policies, customs, practices, and procedures referenced above, SANCHEZ was grossly negligent, reckless, or deliberately indifferent to the health, safety, and welfare of OU, in that SANCHEZ expressly acknowledged and assented to the failure to properly train, supervise, control, conduct proper investigation into prior excessive behavior, screen and review for continued employment, the person and conduct of MELNIKOV, LOPEZ, VASQUEZ, BRASSO, TRUNTZ or ORTIZ.

182.  As a result, SANCHEZ knew or had reason to know that MELNIKOV, LOPEZ, VASQUEZ, BRASSO, TRUNTZ or ORTIZ would act unlawfully and he failed to stop their actions, resulting in the violation of OU's civil rights.

183.  As a direct and proximate result of SANCHEZ' actions and inactions, under color of state law, and in violation of 42 U.S.C.§ 1983, OU was deprived of her constitutional rights to be secure in her person, free from unreasonable seizure and from the use of excessive force, warrantless search and unlawful arrest.

184.  SANCHEZ is directly responsible for the Reports he puts out of his Police Department, both verbal and written, through his Public Information Officers (PIO) and those which are presented to the City of Hollywood, it Board of Commissioners, City Managers and City Attorneys.

185.  The Goal of SANCHEZ in putting reports out to the public is to gain confidence in the public that his policing duties as Chief of Police of the Hollywood Police Department are being handled by him with respect to the law and for the health,

safety and welfare of the City of Hollywood's citizens.

186.   The Goal of SANCHEZ in putting out reports to the City of Hollywood, its Board of Commissioners, City Managers and City Attorneys is in part, to justify the budget he seeks each year and how his annual budget is spent in delivering police services to the City of Hollywood's community.

187.   Sanchez is directly responsible for allowing the PIO to put out verbal reports which include misstatements and false allegations which are not supported by evidence.

188.   Sanchez is directly responsible for allowing annual reports to be released from his department to the City of Hollywood, its Board of Commissioners, City Managers, and City Attorneys which include the names and identifying information of innocent people who have not been convicted for crimes charged by the Department.

189.   As a direct result of the release of reports by SANCHEZ through his Department, both verbal and written Mrs. OU has been labeled a prostitute in the local, statewide, national and international community. She has been scorned by her husband who has since divorced her to save his job as a Chinese Federal Agent, scorned by her only daughter who is now 31, and has lost her business, her livelihood and her confidence in society.

190.   As a direct and proximate result of the violation of OU's civil rights, OU  has  suffered  damages, which damages include: mental anguish, pain and suffering, emotional distress, public humiliation and embarrassment, loss of her relationship with her husband and her daughter, loss of earnings, loss of her business, and a compromise of her immigration status. The losses are permanent and/or continuing and OU will continue

to suffer losses in the future.  Plaintiff is entitled to punitive damages under this count, along with attorneys' fees and costs.

**WHEREFORE**, Plaintiff demands judgment against SANCHEZ for compensatory damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the court deems appropriate.

**COUNT IX**
**MALICIOUS PROSECUTION (Prosecutor RUBIO ASA )**

191.    Paragraphs 1 through 67 are hereby re-alleged and incorporated by reference in this Count.

192.    Prosecutor RUBIO received the charging case file for the prosecution of OU's case on the same day of her arrest, August 10, 2010,  charging OU by Information for the following crime:  Solicitation of Prostitution (796.07(2)(e), assigned case number 16-007463MM10A, in the 17th Judicial Circuit of the County Court in and for Broward County, Florida.

193.    On August 10, 2016, Prosecutor Rubio executed a sworn statement that she was charging Mrs. OU of the crime based on the evidence submitted, and swore that Mrs. OU "did then and there unlawfully offer to commit, commit or engage in prostitution, lewdness or assignation, to wit:  "hand job" sex act for money, contrary to F.S. 796.03(2)(e), relying on the evidence submitted by the arresting officer(s) MELNIKOV and LOPEZ.

194.    The filing packet contained the Probable Cause Affidavit, Report, Supplemental Report and Audio Recording (allegedly of OU offering the act for $40).

195.    The filing attorney, RUBIO, never listened to the audio recording to confirm whether or not the evidence existed.

196.    The filing attorney RUBIO's job is to insure that any and all filing of charges against citizens within her district are true and accurate and are filed with the expectation that there is a reasonable likelihood of conviction.

197.    RUBIO failed in her review of the evidence pre-filing in this case.

198.    RUBIO caused the commencement and/or continuation of criminal proceedings against the Plaintiff subject to this Count.   The subject proceedings had bona fide terminations in Plaintiff's favor in that the charges against  Plaintiff  were dropped  or  dismissed  or  otherwise  resolved  in Plaintiff's favor (approximately two years later), but the case should have ended with RUBIO's review.

199.    There was no probable cause or reasonable basis in fact or in law for RUBIO to cause the commencement of the criminal proceedings against Plaintiff.

200.    RUBIO acted  intentionally  and  with  malice  in  initiating  the  criminal proceedings against the Plaintiff subject to this Count, and she knew or should have known that her actions against Plaintiff were not supported by even arguable probable cause.

201.    As a direct and proximate cause of RUBIO's, actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering,  emotional distress, public humiliation and embarrassment, loss of her relationship with her husband and her daughter, loss of earnings, loss of her business, and a compromise of her immigration status. The losses are permanent and/or continuing and OU will continue to suffer losses in the future.  Plaintiff  is  entitled  to  punitive damages under this count along with attorneys fees and costs.

WHEREFORE,  Plaintiff        demands       judgment against       RUBIO, for

compensatory and punitive damages, cost, reasonable attorneys' fees for malicious

prosecution, and such other and further relief as the Court deems appropriate.

### COUNT X
### MALICIOUS PROSECUTION (Prosecutor KEMP (nka  BURY) ASA )

202.    Paragraphs 1 through 67 are hereby re-alleged and incorporated by

reference in this Count.

203.    Prosecutor KEMP received the prosecution file for the prosecution of

OU's case the week following its filing, on or about August 17, 2010,  which charged OU

by Information for the following crime:  Solicitation of Prostitution (796.07(2)(e),

assigned case number 16-007463MM10A, in the 17th Judicial Circuit of the County Court

in and for Broward County, Florida.

204.    At the time of the receipt of the prosecution file by Prosecutor KEMP, she

had the evidence in the file to review for accuracy and to insure that she could comply

with the state's standard for "reasonable likelihood of success" in prosecuting the case.

205.    The case file contained the Probable Cause Affidavit, Report,

Supplemental Report and Audio Recording (allegedly of OU offering the act for $40).

206.    KEMP sent a discovery exhibit to Mrs. OU and her attorney on or about

September 12, 2016, which outlined the evidence, including the audio recording.

207.    The prosecuting attorney, KEMP, never listened to the audio recording to

confirm whether or not the evidence existed.

208.    The prosecuting attorney KEMP's job is to insure that any and all cases

which include criminal charges against citizens within her district are true and accurate

and are prosecuted with the expectation that there is a reasonable likelihood of

conviction.

209.   KEMPs failure to review the evidence is an intentional administrative duty which refusal or failure to complete this duty constitutes malicious prosecution of the Defendant.

210.   KEMP caused the commencement and/or continuation of criminal proceedings against the Plaintiff subject to this Count.   The subject proceedings had bona fide terminations in Plaintiff's favor in that the charges against  Plaintiff  were dropped  or  dismissed  or  otherwise  resolved  in Plaintiff's favor (approximately two years later), but the case should have ended with KEMP's review.

211.   KEMP acted intentionally and with malice in initiating the criminal proceedings against the Plaintiff subject to this Count, and she knew or should have known that her actions against Plaintiff were not supported by even arguable probable cause.

212.   There was no probable cause or reasonable basis in fact or in law for KEMP to cause the commencement or continuation of the criminal proceedings against Plaintiff.

213.   As a direct and proximate cause of KEMPs's, actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering,  emotional distress, public humiliation and embarrassment, loss of her relationship with her husband and her daughter, loss of earnings, loss of her business, and a compromise of her immigration status. The losses are permanent and/or continuing and OU will continue to suffer losses in the future.  Plaintiff  is  entitled  to  punitive damages under this count along with attorneys fees and costs.

WHEREFORE,  Plaintiff        demands        judgment against       KEMP, for

compensatory and punitive damages, cost, reasonable attorneys' fees for malicious

prosecution, and such other and further relief as the Court deems appropriate.

## COUNT XI
## MALICIOUS PROSECUTION (SATZ STATE ATTORNEY )

214.    Paragraphs 1 through 67 are hereby re-alleged and incorporated by

reference in this Count.

215.    Paragraphs 160 through 184 are hereby re-alleged and incorporated by

reference in this Count.

216.    MICHAEL SATZ is the duly elected State Attorney for the 17th Judicial

Circuit in and for Broward County, Florida.  SATZ hires, trains and supervises all the

assistant state attorneys working under the color of law on his behalf in the filing and

prosecution of criminal cases within his jurisdiction.

217.    SATZ was at all material times hereto responsible for the actions of

RUBIO and KEMP, two (2) ASA's sworn to serve under his authority.

218.    SATZ failed to supervise the actions of RUBIO and KEMP to the extent

that RUBIO filed and KEMP prosecuted for a period of two (2) years a criminal case for

Solicitation of Prostitution against the Plaintiff OU for which there was no independent

evidence.

219.    SATZ failed to supervise the actions of RUBIO and KEMP to the extent

that RUBIO filed and KEMP prosecuted for a period of two (2) years a criminal case for

Solicitation of Prostitution against the Plaintiff OU for which there was exculpatory

evidence in the file, namely the audio tape, which did not reveal the evidence the

Detectives who submitted the case said it revealed.

220.   The audio taped evidence alleged in the case and included with the charging packet at the time of filing was never reviewed by RUBIO, KEMP or SATZ. No one ever listened to the tape.

221.   The prosecuting attorney SATZ job is to ensure that any and all cases which include criminal charges against citizens within his district are true and accurate and are prosecuted with the expectation that there is a reasonable likelihood of conviction.

222.   SATZ's failure to properly train and supervise his ASA's assigned to this case from filing to prosecution and to review the evidence is an intentional administrative duty which refusal or failure to complete this duty constitutes malicious prosecution of the Plaintiff.

223.   SATZ caused the commencement and/or continuation of criminal proceedings against the Plaintiff subject to this Count.   The subject proceedings had bona fide terminations in Plaintiff's favor in that the charges against  Plaintiff  were dropped  or  dismissed  or  otherwise  resolved  in Plaintiff's favor (approximately two years later), but the case should have ended with the initial review by SATZ's attorney assigned to the filing division.

224.   SATZ acted intentionally and with malice in initiating the  criminal proceedings against the Plaintiff subject to this Count, and he knew or should have known that his actions against Plaintiff were not supported by even arguable probable cause.

225.   There was no probable cause or reasonable basis in fact or in law for SATZ to cause the commencement or continuation of the criminal proceedings against Plaintiff.

226.   As a direct and proximate cause of SATZ's, actions, Plaintiff has been

damaged, which damages include: mental anguish, pain and suffering,  emotional distress,

public humiliation and embarrassment, loss of her relationship with her husband and her

daughter, loss of earnings, loss of her business, and a compromise of her immigration

status. The losses are permanent and/or continuing and OU will continue to suffer losses

in the future.  Plaintiff  is  entitled  to  punitive damages under this count, along with

attorney's fees and costs.

WHEREFORE, Plaintiff demands judgment against SATZ,
for compensatory and punitive damages, cost, reasonable attorneys' fees for malicious
prosecution, and such other and further relief as the Court deems appropriate.

### PLAINTIFF DEMANDS TRIAL BY JURY

Respectfully submitted this day of August 10, 2020.

__/s Nicole Sauvola-LaMay, Esquire_____
Nicole Sauvola-LaMay, Esquire
FBN# 611301
4500 PGA Blvd., Suite 200
Palm Beach Gardens, FL  33418
(561)506-5606  Office
(561)229-0169  Facsimile
DESIGNATED E-MAIL ADDRESS:
Colelaw36@gmail.com